WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Tomas Martinez,

              Plaintiff,

v.

Carolyn W. Colvin,

              Defendant.

No. CV-13-00689-PHX-BSB

**ORDER**

Tomas Martinez (Plaintiff) seeks judicial review of the final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability insurance benefits under the Social Security Act (the Act).  The parties have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and have filed briefs in accordance with Local Rule of Civil Procedure 16.1.  For the following reasons, the Court reverses the Commissioner's decision and remands for further administrative proceedings.

## I.  Procedural Background

In August 2009, Plaintiff applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Act.  42 U.S.C. § 401-34.  (Tr. 165-78.)[1]  After the Social Security Administration (SSA) denied Plaintiff's initial application and his request for reconsideration, he requested a hearing before an

---

[1]  Citations to "Tr." are to the transcript of the certified administrative record. (Doc. 15.)

1    administrative law judge (ALJ).  (Tr. 70-71, 96-97.)  After conducting a hearing, the ALJ

2    issued a decision finding Plaintiff not disabled under the Act.  (Tr. 12-22.)  This decision

3    became the final decision of the Commissioner when the Social Security Administration

4    Appeals Council denied Plaintiff's request for review.  (Tr. 1-6); *see* 20 C.F.R. § 404.981

5    (explaining the effect of a disposition by the Appeals Council.)  Plaintiff now seeks

6    judicial review of this decision pursuant to 42 U.S.C. § 405(g).

7    **II.    Medical Record**

8           The record before the Court establishes the following history of diagnosis and

9    treatment related to Plaintiff's health.  The record also includes opinions from State

10   Agency Physicians who examined Plaintiff or reviewed the records related to his health,

11   but who did not provide treatment.

12          **A.    Treatment Records**

13          On January 5, 2008, Plaintiff was admitted to the hospital for psychiatric treatment

14   after reporting suicidal thoughts and alcohol abuse.  (Tr. 925.)  On January 7, 2008,

15   Melissa Finch, Ph.D., conduced a mental status examination and determined that Plaintiff

16   was not seriously mentally ill (SMI) under the Arizona criteria.  (Tr. 610.)  However,

17   after consulting with Plaintiff's treating psychiatrist, on January 8, 2008, Dr. Finch

18   changed her determination and found that Plaintiff met the SMI criteria.  (Tr. 889.)

19   Plaintiff was discharged on January 17, 2008 with diagnoses of schizophrenia (paranoid

20   type), and alcohol abuse.  (Tr. 927.)  The treatment notes indicate that, at the time of

21   discharge, Plaintiff had a suspicious mood, flat affect, and somewhat impaired judgment,

22   but that he was oriented and had normal speech, an intact memory, partial insight, and no

23   hallucinations or suicidal ideation.  (Tr. 926.)

24          A year later, on February 2, 2009, Plaintiff was admitted to the emergency room

25   for a medication overdose and suicidal thoughts.  (Tr. 297, 303.)  After a psychiatric

26   evaluation, he was diagnosed with schizoaffective disorder and polysubstance abuse and

27   discharged from the hospital.  (Tr. 297-303.)

28

The following month, on March 4, 2009, Plaintiff was involuntarily admitted to the hospital as a danger to himself and others. (Tr. 920.) Plaintiff's mother reported that he had "decreased hygiene," refused to take his medication, and that he had paranoid and disorganized thoughts. (Tr. 920.) On March 12, 2009, Plaintiff was placed on "court-ordered" treatment for one year "as persistently or acutely disabled."[2] (Tr. 467, 921.) He was discharged on March 16, 2009 and was diagnosed with psychosis and personality disorder (not otherwise specified), dysthymia, and polysubstance abuse. (Tr. 922.) He was referred to Magellan Health Services for medication management and to Terros for substance abuse services. (Tr. 921-922, 467.)

Plaintiff was admitted to the hospital again on July 17, 2009; he reported feeling suicidal and hearing voices. (Tr. 410.) He was diagnosed with schizoaffective disorder, "depressed," and chronic psychosocial health problems and discharged on July 27, 2009. (Tr 412.) His tests were negative for drug and alcohol use. (Tr. 411-14.) The treatment notes indicate that, at the time of discharge, Plaintiff was alert and oriented, and that he had concrete thoughts and intact insight and judgment. (*Id*. at 411) Plaintiff was diagnosed with schizoaffective disorder and he was "depressed." (*Id.*) Plaintiff was advised to follow-up with his psychiatrist within three days. (Tr. 411-12.)

The next month, on August 28, 2009, Plaintiff was involuntarily admitted to the hospital as a danger to others. (Tr. 420.) At the time of admission, it was noted that Plaintiff was "on court-ordered treatment." (*Id.*) Plaintiff was discharged the next day and was advised to follow-up with his outpatient clinic within seven days. (Tr. 421.) He was diagnosed with schizoaffective disorder (bi-polar type), and his noted stressors included chronic mental illness and limited coping skills. (*Id.*)

On January 26, 2010, Plaintiff was involuntarily admitted to the hospital as a danger to others after he stopped taking his prescribed medication for two months. (Tr. 530.) Plaintiff was angry, yelling at his mother, and talking to himself. (*Id.*) His

---

[2] Plaintiff's court-ordered treatment was later extended for another year (Tr. 903), and then extended again to March 11, 2011. (Tr. 773.)

clinical findings included decreased motivation, feelings of worthlessness, and fair insight and judgment.  (Tr. 531.)  A screening test was negative for drug use.  (*Id.*)  The clinical findings also stated that Plaintiff's coping skills were not commensurate with his age and that he had poor interpersonal skills.  (Tr. 534.)  Plaintiff was diagnosed with schizoaffective disorder (bi-polar type).  (Tr. 532.)  He was discharged on January 27, 2010, and was advised to seek more frequent outpatient care.  (*Id.*)

A month later, on February 17, 2010, Plaintiff was admitted to the hospital with suicidal thoughts, anxiety, and auditory hallucinations.  (Tr. 546.)  Although a drug screening test was negative, the treatment notes on admission indicate the Plaintiff had been drinking three forty-ounce beers a day.  (*Id.*)  He was discharged the next day with diagnoses of bipolar depression, personality disorder, and interpersonal stressors. (Tr. 547.)

A year later, on January 8, 2011, Plaintiff went to the hospital for anxiety and suicidal ideation.  (Tr. 649 (patient "feels like he doesn't want to wake up or be around anymore").)  A screening test was positive for drug use.  (Tr. 665.)  He was discharged on January 9, 2011 with anxiety disorder, depression, and suicide risk, and referred for outpatient treatment.  (Tr. 652.)  On January 15, 2011, Plaintiff was admitted to the hospital for suicidal ideation and anxiety.  (Tr. 640-41.)  He tested positive for drug and alcohol use.  (Tr. 644.)  Plaintiff was diagnosed with depression and suicidal risk. (Tr. 643.)  He was discharged on January 16, 2011 and referred for psychiatric evaluation, treatment, and "long term management."  (Tr. 645.)

On January 30, 2011, Plaintiff went to the emergency room and was admitted for several days for psychiatric observation due to suicidal ideation (he had cut his wrist), and to treat an unrelated medical condition (rhabdomyolysis).  (Tr. 627-629.)  Plaintiff was discharged on February 2, 2011 with several diagnoses, including depression with suicidal ideation and suicide attempt, depression, and bipolar disorder.  (Tr. 623.)  He was referred to inpatient psychiatric care.  (*Id.*)

During this same time period, Plaintiff was treated by Dr. Amanda Troutman, a psychiatrist at Magellan DDC, for schizoaffective disorder and alcohol abuse. She prescribed anti-depressants and anti-psychotic medications for mood swings, hallucinations, paranoia, and social isolation. (Tr. 459, 862.) Her treatment notes reflect that Plaintiff was anxious (Tr. 590 (Jun. 2010)), had a constricted or blunted affect (Tr. 584 (Sept. 2010), (Tr. 588 (Jul. 2010), Tr. 590 (Jun. 2010), Tr. 761,Tr. 802, 823 (Dec. 2011), Tr. 814 (Jan. 2011)), "fair/limited" insight and judgment (Tr. 589 (Jul. 2010), Tr. 587 (Aug. 2010)), limited insight and judgment (Tr. 803 (Dec. 2011)), lacked insight into his mental illness (Tr. 818 (Dec. 2010)), had an irritable mood and an argumentative attitude (Tr. 802 (Dec. 2011)), and poor memory and motivation. (Tr. 764 (Dec. 2011).)

Her treatment notes also indicate that Plaintiff was alert and oriented and had logical thought processes, fair concentration, intact memory, and fair insight and judgment. (Tr. 592-93 (May 2010), Tr. 589-90 (Jun. 2010),Tr. 586-87 (Aug. 2010), Tr. 584-85 (Sept. 2010), Tr. 582-83 (Nov. 2010), Tr. 823-24 (Dec. 2010), Tr. 802-03 (Jan. 2011) 783-84 (Feb. 2011), Tr. 775-76 (Mar. 2011), Tr. 762 (May 2011), Tr. 729-30 (Jul. 2011), Tr. 719-20 (Sept. 2011), Tr 708-09 (Nov. 2011).) She also assessed the severity of Plaintiff's symptoms as "mild." (Tr. 593, 591, 589, 587, 585, 583, 824, 803, 784, 776, 730, 762, 720, 709.)

In April 2011, treating physician Christopher Hiler, M.D., found Plaintiff's mental status questionable, and that he was incapable of self-care. (Tr. 675.) He recommended that Plaintiff reside in a group home. (*Id.*)

**B.    Medical Opinions**

**1.    Amanda Troutman, M.D.**

Treating psychiatrist Dr. Amanda Troutman completed two forms assessing Plaintiff's work-related limitations in November 2010 and May 2011. On both forms, Dr. Troutman opined that Plaintiff had severe limitations in eight areas, moderately

severe limitations in three areas, and a moderate limitation in one area.  (Tr. 579-80, 617-180.)

### 2.       Charles House, Ph.D.

In November 2009, State Agency physician Dr. Charles House evaluated Plaintiff.  (Tr. 475-81.)   Dr. House noted that Plaintiff reports of his alcohol and marijuana use varied from the information in his medical records.  Thus, Dr. House found that Plaintiff was an unreliable historian.  (Tr. 478.)   Dr. House noted that Plaintiff did not have difficulty with the mini-mental status examination, he was not obviously depressed, and there were no signs of a thought disorder.  (Tr. 478.)  He further noted that Plaintiff did not report any significant limitations in his daily life.  (Tr. 480.)  Dr. House diagnosed polysubstance dependence, mood disorder (likely substance related), and dependent and avoidant traits. (Tr. 480.)  Dr. House opined that Plaintiff was not severely limited in the areas of understanding and memory, sustained concentration and persistence, social interaction, or adaptation, "except perhaps when abusing substances."  (Tr. 475.)

### 3.       Sheri Tomak, Psy.D.

In December 2009, State Agency physician Dr. Sheri Tomak reviewed Plaintiff's medical records.  She opined that Plaintiff was not significantly limited in twelve areas, and was moderately limited in six areas.  (Tr. 488-89.)

### 4.       Tasneen Khan, Ed.D.

In May 2010, Dr. Tasneen Khan opined that Plaintiff was not significantly limited in eight areas, and was moderately limited in nine areas.  (Tr. 80-82.)

## III.    Administrative Hearing Testimony

Plaintiff was in his early thirties and had taken several years of college classes at the time of the administrative hearing.  (Tr. 37, 40).  His past relevant work included forklift operator, warehouse worker, electrical helper, light truck driver, telephone sales representative, fast food worker, and stock clerk.  (Tr. 44-45.)  Plaintiff alleged disability due to mental impairments, including schizoaffective disorder, psychotic disorder, and mood disorder.  (Doc. 21 at 2-6.)

1   At the administrative hearing, Plaintiff testified to prior suicide attempts, racing
2   thoughts, hearing voices or seeing visions, anxiety, mood swings, paranoia, and
3   depressive episodes.  (Tr. 49-52, 56, 58.)  Plaintiff testified that he took two to three naps
4   a day.  (Tr. 53.)  Plaintiff testified that he cared for his ten-year-old daughter every other
5   weekend and at Christmas.  (Tr. 50.)  Plaintiff also said he had some difficulty with
6   grooming and hygiene.  (Tr. 57.)  Plaintiff testified that he could not perform his past
7   work as a telephone sales representative due to stress.  (Tr. 51.)

8   Vocational expert Nathan Dean also testified at the administrative hearing.
9   (Tr. 65-69.)  The ALJ asked the vocational expert whether a hypothetical individual with
10  mild limitations in memory, understanding, sustained concentration, persistence, pace,
11  social interaction, and adaption could perform Plaintiff's past work.  (Tr. 65.)  The
12  vocational expert testified while "perhaps" a telephone sales representative job might be
13  precluded if an individual had mild mental limitations, he did not have a solid reason for
14  saying someone with only mild limitations would be unable to perform that work.
15  (Tr. 65-66.)  However, the vocational expert testified that a person with the limitations
16  Dr. Troutman assessed would be unable to sustain any work.  (Tr. 67-68.)

17  **IV.   The ALJ's Decision**

18  A claimant is considered disabled under the Social Security Act if he is unable "to
19  engage in any substantial gainful activity by reason of any medically determinable
20  physical or mental impairment which can be expected to result in death or which has
21  lasted or can be expected to last for a continuous period of not less than 12 months."
22  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A) (nearly identical standard
23  for supplemental security income disability insurance benefits).  To determine whether a
24  claimant is disabled, the ALJ uses a five-step sequential evaluation process.  *See*
25  20 C.F.R. §§ 404.1520, 416.920.

26  **A.     Five-Step Evaluation Process**

27  In the first two steps, a claimant seeking disability benefits must initially
28  demonstrate (1) that he is not presently engaged in a substantial gainful activity, and

(2) that his impairment or combination of impairments is severe.     20 C.F.R. § 404.1520(a)(4)(i) and (ii).   If a claimant meets steps one and two, he may be found disabled in two ways at steps three through five.   At step three, he may prove that his impairment or combination of impairments meets or equals an impairment in the Listing of Impairments found in Appendix 1 to Subpart P of 20 C.F.R. pt. 404. 20 C.F.R. § 404.1520(a)(4)(iii).   If so, the claimant is presumptively disabled.   If not, the ALJ determines the claimant's residual functional capacity (RFC).   20 C.F.R. § 404.1520(e). At step four, the ALJ determines whether a claimant's RFC precludes him from performing his past work.   20 C.F.R. § 404.1520(a)(4)(iv).   If the claimant establishes this prima facie case, the burden shifts to the government at step five to establish that the claimant can perform other jobs that exist in significant number in the national economy, considering the claimant's RFC, age, work experience, and education.     20 C.F.R. § 1520(a)(4)(v).   If the government does not meet this burden, then the claimant is considered disabled within the meaning of the Act.

**B.     The ALJ's Application of the Five-Step Evaluation Process**

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 1, 2006, the alleged disability onset date.   (Tr. 15.)   At step two, the ALJ found that Plaintiff had the following severe impairments: "schizophrenia, polysubstance abuse, dependence, mood disorder, likely substance related, dependent, and avoidant traits, and obesity." (*Id.*)   At the third step, the ALJ found that the severity of those impairments did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (Tr. 16.)   The ALJ next concluded that Plaintiff retained the RFC to perform "heavy work," and that he had "no more than mild restrictions in understanding and memory, social functioning, sustained concentration and persistence, and adaptation to routine change in the work setting."   (Tr. 17.)   At step four, the ALJ found that Plaintiff could not perform his past work as a forklift operator, warehouse worker, electrical helper, light truck driver, fast food worker, or stock clerk.   (Tr. 21.)   However,

1   the ALJ found that Plaintiff could perform his work as a telephone sales representative.

2   (*Id.*)   The ALJ concluded that Plaintiff was not disabled within the meaning of the Act.

3   (Tr. 22.)

4   **V.   Standard of Review**

5          The district court has the "power to enter, upon the pleadings and transcript of

6   record, a judgment affirming, modifying, or reversing the decision of the Commissioner,

7   with or without remanding the cause for a rehearing."   42 U.S.C. § 405(g).   The district

8   court reviews the Commissioner's final decision under the substantial evidence standard

9   and must affirm the Commissioner's decision if it is supported by substantial evidence

10   and it is free from legal error.  *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198

11   (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).   Even if the ALJ

12   erred, however, "[a] decision of the ALJ will not be reversed for errors that are

13   harmless."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

14          Substantial evidence means more than a mere scintilla, but less than a

15   preponderance; it is "such relevant evidence as a reasonable mind might accept as

16   adequate to support a conclusion."   *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

17   (citations omitted); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).   In

18   determining whether substantial evidence supports a decision, the court considers the

19   record as a whole and "may not affirm simply by isolating a specific quantum of

20   supporting evidence."   *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal

21   quotation and citation omitted).

22          The ALJ is responsible for resolving conflicts in testimony, determining

23   credibility, and resolving ambiguities.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

24   Cir. 1995).   "When the evidence before the ALJ is subject to more than one rational

25   interpretation, [the court] must defer to the ALJ's conclusion."  *Batson v. Comm'r of Soc.*

26   *Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (citing *Andrews*, 53 F.3d at 1041).

27

28

1  **VI.    Plaintiff's Claims**

2          Plaintiff claims that the ALJ's disability determination is not supported by

3  substantial evidence because it is based on an "inaccurate and incomplete" description of

4  the medical evidence (Doc. 21 at 9), the ALJ's mental impairment findings are internally

5  inconsistent and not supported by substantial evidence (*Id.* at 18), the ALJ erred by

6  rejecting treating physician Dr. Troutman's opinion (*Id.* at 19), the ALJ erred by relying

7  on examining psychiatrist Dr. House's opinion to support his disability determination (*Id.*

8  at 24), the ALJ erred by rejecting Plaintiff's subjective complaints (*Id.* at 26), and the

9  ALJ erred by ignoring lay witness testimony.  (*Id.* at 28.)  As discussed below, the Court

10  finds that the ALJ erred by rejecting Dr. Troutman's opinion and Plaintiff's subjective

11  complaints, and does not reach Plaintiff's remaining claims.

12          **A.    The ALJ's Assessment of the Treating Psychiatrist's Opinion**

13          In weighing medical source evidence, the Ninth Circuit distinguishes between

14  three types of physicians: (1) treating physicians, who treat the claimant; (2) examining

15  physicians, who examine but do not treat the claimant; and (3) non-examining physicians,

16  who neither treat nor examine the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

17  1995).  Generally, more weight is given to a treating physician's opinion.  *Id*.  The ALJ

18  must provide clear and convincing reasons supported by substantial evidence for

19  rejecting a treating or an examining physician's uncontradicted opinion.  *Id.*; *Reddick v.*

20  *Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  An ALJ may reject the controverted opinion

21  of a treating or an examining physician by providing specific and legitimate reasons that

22  are supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211,

23  1216 (9th Cir. 2005); *Reddick*, 157 F.3d at 725.

24          Plaintiff argues that the ALJ erred by rejecting treating psychiatrist

25  Dr. Troutman's November 2010 and May 2011 opinions that Plaintiff had "moderate,"

26  "moderately severe," and "severe" limitations in his ability to perform mental work-

27

28

related activities.[3]   (Doc. 21 at 19.)   In November 2010, Dr. Troutman completed a Medical Assessment of Claimant's Ability to Perform Work-Related Activities (Mental)." (Doc. 579.)  She opined that Plaintiff was "severe[ly]" impaired in his ability to relate to other people, and in his restriction of daily activities and personal interests were "severe." (Tr. 579.)  She found that Plaintiff had "moderately severe" deterioration of personal habits.  (*Id.*)  She also opined that Plaintiff had "moderately severe" impairments in his ability to understand, carry out, and remember instructions, to respond appropriately to supervisors, and to perform simple tasks.  (*Id.*)  She found that Plaintiff was "severe[ly]" impaired in his ability to respond appropriately to co-workers and customary work pressures, and to perform complex, repetitive, and varied tasks. (Tr. 579-80.)  She also opined that Plaintiff's restrictions and limitations were not due solely to alcohol or drug use and, that absent drug or alcohol use, there would be no substantial change in the assessed restrictions and limitations.  (Tr. 580.)

The ALJ gave "little weight" to Dr. Troutman's November 2010 opinion. (Tr. 21.)   However, other than Dr. Troutman's opinion that Plaintiff had "moderately severe" deterioration of personal habits, and her opinion regarding the impact of Plaintiff's substance abuse on his disabling limitations, the ALJ did not specifically discuss the weight he assigned to Dr. Troutman's assessment of Plaintiff's ability to perform work-related mental activities.  The ALJ found that Plaintiff had "no more than mild restrictions in understanding and memory, social functioning, sustained concentration and persistence, and adaptation to routine changes in the work setting." (Tr. 17.)

Thus, the ALJ apparently rejected Dr. Troutman's opinion that Plaintiff had moderately severe or severe impairments in his abilities to perform those work-related

---

[3]   Dr. Troutman's 2010 and 2011 opinions are identical.  (*Compare* Tr. 579-80 *with* Tr. 617-18).  The ALJ, however, did not specifically mention Dr. Troutman's May 2011 opinion or discuss the weight he assigned that opinion. (Tr. 21.)  Plaintiff does not address the ALJ's failure to specifically discuss Dr. Troutman's May 2011 opinion. (Doc. 21 at 19-24.)  Accordingly, the Court does not address that issue further.

mental activities.   (*Compare* Tr. 17 *with* Tr. 579-80.)   Because the ALJ apparently rejected those findings, it was error for him to fail to provide specific and legitimate reasons for doing so.  *See Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) (stating that "[b]y disregarding [the treating physicians'] opinions and making contradictory findings, [the ALJ] effectively rejected them."); *Sinohui v. Astrue*, 2011 WL 1042333, at *14 (C.D. Cal. 2011) ("In excluding from his RFC determination [the examining physician's] opinions that plaintiff was moderately limited in his ability to understand and remember detailed instructions, in the ability to carry out detailed instructions, and in the ability to interact appropriately with the general public, the ALJ implicitly rejected those opinions without providing any reason for doing so.  This constitutes error.").  As discussed in Section VII, the error was not harmless.

### 1.   Opinion regarding Deterioration of Personal Habits

The ALJ specifically found that Dr. Troutman's opinion that Plaintiff had "moderately severe" "deterioration in his personal habits" was inconsistent with her treatment notes from Magellan showing that Plaintiff's functioning was "stable and improved."  (Tr. 21.)  The ALJ's, however, did not cite to the treatment notes upon which he relied and, in fact, did not specifically discuss any of Dr. Troutman's treatment notes or explain why general findings of improvement or stability undermined Dr. Troutman's opinion about Plaintiff's personal habits.[4]

The record reflects that, although Dr. Troutman noted that Plaintiff often had "global improvement" (Tr. 583, 585, 587, 589, 79, 720, 762, 770, 784, 803, 815, 824), that he was "stable on medications" (Tr. 709, 720, 730, 762), or that his mood was stable (Tr. 775), her treatment notes did not indicate that his "personal habits" were "stable or improved."   Additionally, Dr. Troutman's treatment notes regularly documented mental

---

[4] Earlier in his decision, the ALJ discussed an August 5, 2011 treatment note from Plaintiff's non-physician case manager, Lisette Calvillo, at Magellan (Tr. 19 (citing Admin. Hrg. Ex. 31F at 28 [Tr. 726]), and also noted Plaintiff's GAF scores (Tr. 19 (citing Admin. Hrg. Ex. 13F at 4-6, 8 [Tr. 446-448, 489]), Admin. Hrg. Ex. 31F at 11, 23, 28, 32, 64, 78, 87, 105, 116, 118, 126 [Tr. 709, 721, 726, 730, 762, 776, 785, 803, 814, 816]).)  The ALJ did not otherwise discuss Dr. Troutman's treatment notes.

1   status abnormalities such as auditory hallucinations, constricted or blunted affect,

2   impoverished speech, fair concentration, and fair to limited insight/judgment.  (Tr. 592-

3   93, 590-91, 588-89, 586-87, 584-85, 582-83, 823-24, 814-15, 802-03, 783-84, 775-76,

4   766-67, 761-62, 729-30, 719-20, 708-09).  Although Dr. Troutman noted improvement or

5   that Plaintiff was sometimes stable, she nonetheless found that Plaintiff lacked insight

6   into his mental illness (principally schizoaffective disorder), and recommended that he

7   remain on court-ordered treatment.  (Tr. 818.)  Additionally, she consistently found that

8   Plaintiff had "psychological/environmental" and occupational problems.  (Tr. 585, 587,

9   589, 593, 709, 720, 730, 762, 767, 785, 803, 815, 824.)

10       The ALJ's conclusory statement that Dr. Troutman's notations of general

11   improvement or stability were inconsistent with her opinion regarding Plaintiff's

12   deterioration of personal habits, without discussion of or citation to Dr. Troutman's

13   treatment notes, was not a legally sufficient reason for discounting her opinion that

14   Plaintiff had moderately severe deterioration of his personal habits.  *See* 20

15   C.F.R. § 404.1529(c)(2) (requiring consideration of objective medical evidence in

16   reaching disability determination).  Accordingly, the ALJ erred by rejecting

17   Dr. Troutman's opinion regarding the deterioration of Plaintiff's habits.

18              **2.      Opinion Regarding Substance Abuse**

19       The ALJ also specifically rejected Dr. Troutman's 2010 opinion that Plaintiff

20   would not experience a substantial change in functioning absent alcohol use as

21   inconsistent with Plaintiff's statement that he sometimes "experienced unusual thoughts"

22   when using alcohol or marijuana.  (Tr. 21.)  When there is evidence of substance abuse,

23   and a finding of disability, the ALJ must determine whether the claimant's limitations

24   remain in the absence of substance abuse.[5]  *See* 42 U.S.C. §§ 423(d)(2)(C) ("an

25   individual shall not be considered disabled . . . if alcoholism or drug addiction

26   would . . . be a contributing factor material to the Commissioner's decision that the

27

28       [5] "'A finding of "disabled" under the five-step inquiry does not automatically
    qualify a claimant for disability benefits.'"  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.
    2007) (quoting *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir.2001)).

1    individual is disabled"), 20 C.F.R. § 404.1535(a); *Parra*, 481 F.3d at 746-47.  A claimant

2    may not be found "disabled" if substance abuse would be "a contributing factor material"

3    to a disability determination.  *Parra*, 481 F.3d at 746.[6]

4         "Under the implementing regulations, the ALJ must conduct a drug abuse and

5    alcoholism analysis (DAA analysis) by determining which of the claimant's disabling

6    limitations would remain if the claimant stopped using drugs or alcohol."  *Id.* at 747.  The

7    DAA analysis must be performed *after* the ALJ has made the five-step disability

8    determination.  *See id.*  Here, the ALJ did not determine that Plaintiff was "disabled."

9    Thus, while the ALJ mentioned Plaintiff's substance use, he did not perform the DAA

10   analysis.  Because Dr. Troutman's opinion regarding Plaintiff's substance abuse pertains

11   to the DAA analysis, and the ALJ did not conduct a DAA analysis in this case, the Court

12   will not reach Plaintiff's assertion that the ALJ erred in discounting Dr. Troutman's

13   opinion on that issue.

14        **B.     Assessing a Claimant's Credibility**

15        Plaintiff also argues that the ALJ erred in discounting his subjective complaints.

16   An ALJ engages in a two-step analysis to determine whether a claimant's testimony

17   regarding subjective pain or symptoms is credible.  *Lingenfelter v. Astrue*, 504 F.3d 1028,

18   1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has

19   presented objective medical evidence of an underlying impairment 'which could

20   reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036

21   (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

22        The claimant is not required to show objective medical evidence of the pain itself

23   or of a causal relationship between the impairment and the symptom.  *Smolen*, 80 F.3d at

24   1282.  Instead, the claimant must only show that an objectively verifiable impairment

25   "could reasonably be expected" to produce his pain.  *Lingenfelter*, 504 F.3d at 1036

26   (quoting *Smolen*, 80 F.3d at 1282); *see also Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d

27   _____

28        [6]   The claimant has the burden of proof under § 423(d)(2)(C) to show that he
          would still be disabled in the absence of drug or alcohol addiction.  *Parra*, 481 F.3d at
          748.

1155, 1160-61 (9th Cir. 2008) ("requiring that the medical impairment could reasonably be expected to produce pain or another symptom . . . requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon").  It is undisputed that Plaintiff presented evidence of an impairment that could produce the alleged symptoms.

Second, if a claimant produces medical evidence of an underlying impairment that is reasonably expected to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination.[7]  *See Smolen*, 80 F.3d at 1281; *Gregor v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).  When evaluating a claimant's credibility, the ALJ may consider the objective medical evidence, the claimant's daily activities, the location, duration, frequency, and intensity of the claimant's pain or other symptoms, precipitating and aggravating factors, medication taken, and treatments for relief of pain or other symptoms.  *See* 20 C.F.R. § 404.1529(c); *Bunnell*, 947 F.2d at 346.

An ALJ may also consider such factors as a claimant's inconsistent statements concerning symptoms and other statements that appear less than candid, the claimant's reputation for lying, unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, medical evidence tending to discount the severity of the claimant's subjective claims, and vague testimony as to the alleged disability and

---

[7]  Relying on the Ninth Circuit decision in *Bunnell*, the Commissioner initially argues that an ALJ need not provide "clear and convincing" reasons for discrediting a claimant's testimony regarding subjective symptoms, and instead must make findings that are "'supported by the record' and 'sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds.'" (Doc. 18 at 9 (citing *Bunnell*, 947 F.2d at 345-46).)  In *Bunnell*, the court did not apply the "clear and convincing" standard, and the Commissioner argues that because no subsequent en banc court has overturned *Bunnell*, its standard remains the law of the Ninth Circuit.  (Doc. 18 at 8-9.)  Although the Ninth Circuit has not overturned *Bunnell*, subsequent cases have elaborated on its holding and have accepted the clear and convincing standard.  *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011); *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Lingenfelter*, 504 F.3d at 1036; *Reddick*, 157 F.3d at 722; *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).  Accordingly, the Court will determine whether the ALJ provided clear and convincing reasons for discounting Plaintiff's credibility.

symptoms.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Smolen*, 80 F.3d at 1284.  If substantial evidence supports the ALJ's credibility determination, that determination must be upheld, even if some of the reasons cited by the ALJ are not correct.  *Carmickle*, 533 F.3d at 1162.

### C.      The ALJ's Credibility Determination

Here, the ALJ noted Plaintiff's testimony that he had "ongoing symptoms of paranoia, anxiety, and depression" (Tr. 18), and that he experienced "auditory hallucinations," "frequent crying jags, and takes [two to three] naps each day for [one] hour or more."  (Tr. 18.)  The ALJ also noted Plaintiff's testimony that he had not used alcohol in four to five months, or marijuana for about one year prior to the January 12, 2012 hearing.  (*Id.*)  The ALJ found Plaintiff's "testimony to be not wholly credible concerning his symptoms of impairment and overall allegations of disability," but did not specifically state which portions of Plaintiff's testimony he rejected.    (Tr. 18.)

Because there was no evidence of malingering (Tr. 18), the ALJ was required to provide clear and convincing reasons for concluding that Plaintiff's subjective complaints were not wholly credible.  As discussed below, the ALJ listed several factors in support of his credibility determination, including that: (1)  Plaintiff had a "significant history of alcohol and narcotic abuse, and [was] not entirely forthcoming with mental health providers about concerning the frequency and recency with which he has used these substances" (Tr. 18 (citing Admin. Hrg. Ex. 15F at 3)); (2) Plaintiff was noncompliant with treatment; and (3) Plaintiff cared for his minor daughter.  (Tr. 18-19.)  As discussed below, the Court reverses the ALJ's credibility determination.

### 1.      Plaintiff's Inconsistent Reporting of Substance Use

The ALJ discounted Plaintiff's testimony regarding when he stopped using marijuana and alcohol because Plaintiff gave inconsistent reports of his alcohol and narcotic use and because of the evidence of Plaintiff's continued use.  (Tr. 18.)  As part of the overall disability analysis, the ALJ must consider whether there are any inconsistencies in the evidence, such as Plaintiff's inconsistent statements.  *See* 20 C.F.R.

§ 404.1529(c)(4) (stating that an ALJ must consider "whether there are any inconsistencies in the evidence."); Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *5 (stating that a strong indicator of the credibility an individual's statements is their consistency, both internally and with other information in the record); *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) ("Credibility determinations do bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or an inconsistency between a claimant's subjective complaints and his diagnosed condition.").

Here, the ALJ noted that Plaintiff had not been entirely forthcoming with mental health providers regarding his use of narcotics and alcohol.  (Tr. 18 (citing Admin. Hrg. Ex. 15F at 3).)  Additionally, the ALJ stated that the medical record was inconsistent with Plaintiff's administrative hearing testimony that he had stopped using drugs and alcohol. (Tr. 19.)   The ALJ cited evidence that in June 2009 and October 29, 2010, Plaintiff reported consuming four to five alcoholic beverages a day.  (461, 465, Tr. 18 (citing Admin. Hrg. Ex. 31F at 201).)   Additionally, during a psychiatric hospitalization in March 2009, Plaintiff's urine drug screen was positive for cannabinoids at the time of admission.  (Tr. 19 (citing Admin. Hrg. Ex. 33F at 2).)   During a hospitalization in January 2008, alcohol withdrawal was noted as a possible cause of Plaintiff's episode of decompensation.  (Tr. 19 (citing Admin. Hrg. Ex. 33F at 6).)   Treatment notes also indicate that Plaintiff was charged with a DUI alcohol offense in February 2008.  (Tr. 19 (citing Admin. Hrg. Ex. 31F at 164.)  Finally, on August 5, 2011, Plaintiff's outpatient psychiatric clinic noted that he had failed to complete a substance abuse program, and was "not willing" to make another attempt.  (Tr. 19, Tr. 726.)

When assessing Plaintiff's credibility, an ALJ properly considers the inconsistency between a claimant's hearing testimony and the medical record.  *See Webb,* 433 F.3d at 688 ("Credibility determinations do bear on evaluations of medical evidence.)   Here, evidence that Plaintiff failed to complete a substance abuse program on August 5, 2011 and that he was not willing to make another attempt to do so, was inconsistent with

1   Plaintiff's hearing testimony that he had stopped using marijuana one year before the
2   January 12, 2012 administrative hearing and that he had stopped drinking alcohol five
3   months before that hearing.   Accordingly, the ALJ properly discounted Plaintiff's
4   testimony regarding his marijuana and alcohol use.

5   **2.      Plaintiff's Non-Compliance with Treatment**

6   The ALJ also found Plaintiff's credibility diminished by his lack of full
7   compliance with treatment.  (Tr. 19.)  Non-compliance with treatment may form the basis
8   for an adverse credibility finding.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)
9   (stating that "an unexplained, or inadequately explained, failure to . . . follow a prescribed
10  course of treatment . . . can cast doubt on the sincerity of the claimant's pain testimony);
11  *Burch*, 400 F.3d at 681 (lack of consistent treatment may be considered in assessing
12  credibility as to severity of pain); *Bunnell*, 947 F.2d at 346 (non-compliance with
13  prescribed course of treatment is a relevant factor in assessing credibility).

14  The ALJ noted that some treatment records from Magellan indicated that Plaintiff
15  was less than fully compliant with treatment.  (Tr. 19.)  Specifically, the ALJ cited an
16  August 5, 2011 treatment note from Magellan describing Plaintiff's medication usage as
17  "sporadic," and indicating that he "was not interested" in attending counseling or group
18  therapy."  (Tr. 19 (citing Admin. Hrg. Ex. 31F at 28).)  Plaintiff argues that the ALJ erred
19  by relying on his non-compliance with treatment to discredit his symptom testimony
20  because non-compliance with treatment is a reflection of Plaintiff's mental impairments
21  (Doc. 21 at 27), and therefore does not provide an appropriate basis for discrediting his
22  subjective symptom testimony.

23  Although the record reflects that Plaintiff was noncompliant with treatment
24  (Tr. 818, 940), it also reflects that Plaintiff lacked insight into his mental illness and, that
25  rather than independently seeking treatment, he frequently received court-ordered
26  treatment.  (Tr. 467, 673-75, 726, 773, 921.)  *But see Minter v. Comm'r Soc. Sec.*, 2012
27  WL 1866608, at *5 (D. Or. May 22, 2012) (when the claimant had recognized she needed
28  help and sought out counseling, her failure to follow through with that treatment was a

clear and convincing reason for the ALJ to discredit her symptom testimony). Additionally, treatment notes indicate that Plaintiff's non-compliance was a trait of his mental impairment. (Tr. 940 (stating that Plaintiff was not interested in understanding his condition, but that "barriers to progress [was] a trait of dependent pd.")), and that he complied with treatment when it was court-ordered and structured. (Tr. 726, 905-06, 921.)

Thus, Plaintiff's noncompliance with treatment was not an appropriate basis for the ALJ to discount his credibility. *See Nguyen v. Chater*, 100 F.3d 1462 (9th Cir.1996) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.") (internal quotation marks and citation omitted); *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009) (collecting cases finding that: "a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the result of the mental impairment itself and, therefore, neither willful nor without a justifiable excuse") (internal citations and quotations omitted); *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) (noting that "mental illness in general . . . may prevent the sufferer from taking his prescribed medicines or otherwise submitting to treatment."); *see also Butts v. Astrue*, 2011 WL 2261279, at *3 (C.D. Cal. Jun. 8, 2011) (finding that claimant's noncompliance with her treatment plan could have been symptomatic of the severity of her mental impairment and, thus, was not a clear and convincing reason for discrediting her subjective symptom testimony); *Buckard v. Astrue*, 2010 WL 5789044, at *16 (D. Or. Dec.7, 2010) (finding that claimant's noncompliance with her depression medications did not constitute a legitimate basis for discrediting her testimony); *Clark v. Astrue*, 2010 WL 457357, at *5 (E.D. Wash. Feb.5, 2010) ("[I]t was not appropriate for the ALJ to consider plaintiff's limited mental health treatment as evidence of a lack of credibility since the failure to follow through with mental health treatment may itself be a symptom of significant mental health problems.").

Accordingly, the Court finds that Plaintiff's noncompliance with treatment was not a legally sufficient reason for discounting his credibility.

### 3.   Child Care

The ALJ also discounted Plaintiff's credibility based on his ability to care for his minor child.  (Tr. 19.)  The ALJ noted that Plaintiff had custody of his daughter for one week at Christmas and every other weekend, and that Plaintiff "did not report needing any particular help in caring for her, or that he requires any supervised visitation due to his mental impairments."  (Tr. 19, 50.)  Plaintiff argues that this reason is not supported by substantial evidence in the record because Plaintiff only recently gained joint custody of his daughter (Tr. 38, 50, 814), and his mother helped care for her by making sure she brushed her teeth, showered, dressed, and correcting her when she misbehaved.  (Tr. 50, 224, 276.)

The Ninth Circuit has stated that the fact a claimant engages in normal daily activities "does not in any way detract from [his] credibility as to [his] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).  As the Ninth Circuit has explained, "[o]ne does not need to be 'utterly incapacitated' in order to be disabled." *Id.* (quoting *Fair*, 885 F.2d at 603).  Rather, the daily activities must involve skills that could be transferrable to a workplace and a claimant must spend a "substantial part of his day" engaged in those activities.  *See Orn*, 495 F.3d at 639 (finding that the ALJ erred in failing to "meet the threshold for transferable work skills, the second ground for using daily activities in credibility determinations.")

The Ninth Circuit has found that the ability to care for a child may be evidence of a claimant's ability to work.  *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("the ALJ could reasonably conclude that Molina's activities, including walking her two grandchildren to and from school, attending church, shopping, and taking walks, undermined her claims that she was incapable of being around people without suffering debilitating panic attacks."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (the ALJ properly found that the claimant's claim of totally disabling pain was undermined by her testimony about her activities, such as attending to the needs of her two young children).

- 20 -

1    In discrediting Plaintiff's symptom testimony based upon his ability to care for his

2    minor child, the ALJ noted Plaintiff's testimony that, pursuant to a shared custody

3    agreement, he "has his daughter for one week at Christmas, as well as every other

4    weekend."  (Tr. 19, 50.)  The ALJ, however, disregarded the fact that Plaintiff lived with

5    his mother and that she helped care for his daughter.  (Tr. 274.)  Additionally, Plaintiff

6    did not have primary custody of his daughter and thus, did not regularly spend a

7    substantial part of his day providing childcare.  *But see Conley v. Astrue*, 471 Fed. App'x

8    758, 760 (9th Cir. 2012) (stating that the ALJ did not err in assessing the claimant's RFC

9    and discounting her subjective complaints based on evidence that she cared for her

10   grandchildren for several hours a day).

11   Plaintiff's ability to care for his daughter with assistance every other weekend and

12   for one week at Christmas is not a legally sufficient reason for rejecting Plaintiff's

13   symptom testimony because this limited childcare did not indicate that Plaintiff could

14   work on a regular and continuing basis.  *See Orn*, 495 F.3d at 639 (daily activities,

15   including child care, "may be grounds for an adverse credibility finding if a claimant is

16   able to spend a substantial part of his day engaged in pursuits involving the performance

17   of physical functions that are transferable to a work setting."); *Santiago v. Astrue*, 2010

18   WL 466052, at *19-20 (D. Ariz. Feb. 1, 2010) (concluding that the ALJ erred in rejecting

19   the claimant's subjective complaints based on her ability to care for her children with

20   assistance).

21   Although the ALJ provided a legally sufficient reason for discounting Plaintiff's

22   testimony that he had stopped using marijuana and alcohol, he did not provide legally

23   sufficient reasons for discounting Plaintiff's other testimony regarding his symptoms and

24   limitations.  Accordingly, the Court reverses the ALJ's credibility determination.

25   **VII.   The ALJ's Errors Were Not Harmless**

26   Considering the record as a whole, the Court concludes that the ALJ erred by

27   rejecting the 2010 opinion of Plaintiff's treating psychiatrist, Dr. Troutman, that the

28   impairment of Plaintiff's ability to relate to other people, his restriction of daily activities

and personal interests were "severe," his deterioration of personal habits was "moderately severe," that he had "moderately severe" impairments in his ability to understand, carry out, and remember instructions, to respond appropriately to supervisors, and to perform simple tasks, and that he was "severe[ly]" impaired in his ability to respond appropriately to co-workers and customary work pressures, and to perform complex, repetitive, and varied tasks.   (Tr. 579-80.)   He also erred by discounting Plaintiff's subjective complaints, with the exception of Plaintiff's administrative hearing testimony regarding his alcohol and marijuana use.

These errors were not harmless because the vocational expert testified that an individual with the limitations assessed by Dr. Troutman in 2010 would be unable to sustain employment.[8]   (Tr. 67-68.)   Having found that the ALJ erred, the Court must determine whether to remand this matter for an award benefits or for further proceedings.

**VIII.   Remand for Further Proceedings**

This Court has discretion to reverse and remand this case for further administrative proceedings or for an immediate award of benefits.   *See* 42 U.S.C. § 405(g) (sentence four); *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).   "[R]emand for further proceedings is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits."   *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001).

In *Smolen v. Chater*, the Ninth Circuit held that evidence should be credited and an action remanded for an immediate award of benefits when the following three factors are satisfied: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.   80 F.3d 1273, 1292 (9th Cir. 1996); *see Varney v. Sec. of Health & Human Servs.*, 859 F.2d 1396, 1400 (9th

---

[8]   The vocational expert also stated that his testimony would be the same based on Dr. Troutman's 2011 opinion.   (Tr. 68.)

1    Cir. 1988) (*Varney II*) ("In cases where there are no outstanding issues that must be

2    resolved before a proper determination can be made, and where it is clear from the record

3    that the ALJ would be required to award benefits if the claimant's excess pain testimony

4    were credited, we will not remand solely to allow the ALJ to make specific findings

5    regarding that testimony."); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989)

6    (same); *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) ("In a recent case where

7    the ALJ failed to provide clear and convincing reasons for discounting the opinion of

8    claimant's treating physician, we accepted the physician's uncontradicted testimony as

9    true and awarded benefits.") (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1988));

10   *Hammock v. Bowen*, 879 F.2d 498, 503 (9th Cir. 1989) (extending *Varney II's* "credit as

11   true" rule to a case with outstanding issues where the claimant already had experienced a

12   long delay and a treating doctor supported the claimant's testimony).

13           Since *Varney* was decided, the Ninth Circuit has favored the "credit as true"

14   doctrine.  *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Smolen*, 80 F.3d at

15   1292; *Reddick*, 157 F.3d at 729; *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.2000);

16   *Moore v. Comm'r of Soc. Sec.*, 278 F.3d 920, 926 (9th Cir. 2002); *McCartey v.

17   Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002); *Moisa v. Barnhart*, 367 F.3d 882,

18   887 (9th Cir. 2004); *Benecke v. Barnhart*, 379 F.3d 587, 593-95 (9th Cir. 2004); *Orn*, 495

19   F.3d at 640; *Lingenfelter*, 504 F.3d at 1041.

20           Here, the ALJ did not proffer legally sufficient reasons for discounting

21   Dr. Troutman's opinion[9] or Plaintiff's subjective complaints.  Accordingly, the Court

22   credits that opinion and testimony as true.[10]  Crediting Dr. Troutman's opinions as true,

23   Plaintiff is disabled based on the vocational expert's testimony.  (Tr. 67-68 (an individual

24   _____

25           [9]   The Court has not determined whether the ALJ provided legally sufficient

26   reasons for discounting Dr. Troutman's opinion regarding the degree of Plaintiff's
     limitations absent substance use.  The ALJ should revisit this opinion as part of his DAA

27   analysis on remand.

28           [10]   The Court does not credit as true Plaintiff's testimony regarding his cessation of
     substance use because the ALJ provided a legally sufficient reason discounting that
     testimony.

with the limitations assessed by Dr. Troutman could not "sustain employment."). However, the Court remands for further proceedings, not an award of benefits, for the ALJ to conduct a DAA analysis to determine whether Plaintiff's disabling limitations remain in the absence of substance use.  *See* 42 U.S.C. §§ 423(d)(2)(C) ("an individual shall not be considered disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's decision that the individual is disabled"); *Parra*, 481 F.3d at 746.  After conducting a DAA analysis, the Commissioner may deny or award benefits.

Accordingly,

**IT IS ORDERED** that the Commissioner's decision is reversed and this matter is **REMANDED** for further proceedings as set forth in this Order.  The Clerk of Court is directed enter judgment in Plaintiff's favor and to terminate this action.

Dated this 1st day of August, 2014.

Bridget S. Bade
United States Magistrate Judge